[No. 15506.    In Bank. — November 25, 1893.]

## L. M. WAGNER, PETITIONER, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, RESPONDENT.

INSOLVENCY—EFFECT OF FINAL DISCHARGE—JURISDICTION—EXAMINATION —PROHIBITION.—After the final discharge of an insolvent debtor the insolvency proceeding is ended as to him, and so long as the discharge remains effective the court is without jurisdiction over his person, and is without authority to proceed under section 47 of the Insolvent Act and to examine him for the purpose of ascertaining whether or not all the property of his estate had come into the hands of the assignee, or to examine any other person against whom no citation had been issued under section 24 of that act; and such examination will be prevented by writ of prohibition.

ID.—RESTORATION OF JURISDICTION—APPLICATION OF CREDITOR TO ANNUL DISCHARGE—ORDER TO SHOW CAUSE.—The jurisdiction of the court over the person of the insolvent after his discharge can only be restored by an application of some creditor to set aside and annul the discharge, as provided by section 53 of the Insolvent Act; and the court will not be prevented by writ of prohibition from citing the insolvent to show cause why the order of discharge should not be vacated upon petition of a creditor, upon the ground of alleged fraud in obtaining it.

APPLICATION to the Supreme Court for a writ of prohibition to the Superior Court of Los Angeles County. On the 27th of October, 1893, an opinion was rendered

in this matter directing the issuance of a writ of prohibition. Subsequently a petition for a rehearing was filed, on which application the following opinion was rendered.

The facts are stated in the opinion of the court.

*W. H. Pollard,* for Petitioner.

*Graff & Latham,* for Respondent.

The COURT.—The petition for a rehearing will be denied. It appears that on September 28, 1892, the petitioner, L. M. Wagner, was adjudged insolvent by the superior court of Los Angeles, and subsequently the court, in the matter of the insolvency proceeding, made a distribution of all of the estate of the insolvent which had come into the possession of the assignee, and granted to the petitioner here a certificate of discharge of all debts and claims existing against her at the date of the filing of her petition to be adjudged insolvent, and also made an order discharging the assignee, which latter order was subsequently vacated.

When the order was made granting to the petitioner here a certificate of discharge, the insolvency proceeding was ended as to her, and the court had no further jurisdiction over the person of the insolvent, and its jurisdiction could only be restored by an application upon the part of some creditor to set aside and annul the decree or certificate discharging her from her indebtedness as provided by section 53 of the Insolvent Act.

It seems, however, that since the making of the orders referred to two petitions have been filed in the superior court, each praying that the certificate of discharge granted to the petitioner herein be annulled upon the ground of alleged fraud in obtaining it; one of these petitions was filed by the assignee in the insolvency proceeding, and the other by a creditor of the insolvent Wagner. The court thereupon made an order requiring the petitioner herein to appear on October 30, 1893,

and show cause why the order discharging her from her indebtedness should not be vacated, and upon the same day, upon further petition of the assignee, the court made an order requiring the petitioner to appear before the court upon September 19, 1893, for examination in relation to her property, and also directed that subpœnas should issue, requiring the attendance as witnesses of other persons claiming to own such property.    This latter petition and order seems to be based upon section 47 of the Insolvent Act, and the object of this proceeding is to prohibit the court from proceeding under this latter order.    We think the application must be granted. After the final discharge of the petitioner in the insolvency proceeding, the court was without authority to proceed under section 47 of the Insolvent Act and examine the petitioner here for the purpose of ascertaining whether or not all the property of the insolvent estate had come into the hands of the assignee, or to examine any other person against whom no citation had been issued under section 24 of the Insolvent Act.    We think this conclusion is sustained by the reasoning of Woodruff, J., *In re Dole*, 9 Nat. Bk. Reg. 193, and also by the case of *In re Witkowski*, 10 Nat. Bk. Reg. 209.

Our former judgment in this case, as actually entered by the clerk, and the writ issued in pursuance thereof, were not in exact accordance with the opinion filed, and the judgment is amended by striking therefrom all that part which prohibits the superior court from requiring the said L. M. Wagner to show cause why the order of discharge theretofore granted to her should not be vacated, annulled and set aside, and the writ of prohibition will be amended in the same particulars.

The prohibition only extends to proceeding further under the order of September 1, 1893, requiring the said Wagner to appear in the superior court on September 19, 1893, and submit to an examination relating to her property, and which also directed subpœnas to issue requiring the attendance of certain persons therein named as witnesses.

BEATTY, C. J., dissenting.—The filing of a new opinion by the court denying a rehearing of this cause presents a proper occasion for me to state the grounds of my dissent from the judgment and from the present order. In this new opinion the facts which I deem most material to the discussion, although correctly stated, are somewhat obscured by the more particular statement of facts which, to my mind, are wholly immaterial. I shall therefore endeavor to state the case—which is very simple—in a manner which will clearly present the single question we are called upon to decide:

L. M. Wagner was adjudicated an insolvent on her voluntary petition. Hall was appointed assignee. In the usual course of proceedings, Wagner, the insolvent, received her certificate of discharge from the claims of creditors, and a few months later the final account of Hall, the assignee, was settled, and he was discharged. Shortly afterwards, Hall and a creditor of the insolvent filed separate petitions on the same day, each alleging fraud on the part of the insolvent in concealing her property and preventing it from reaching the hands of her assignee. In the creditor's petition he prayed for an order setting aside the insolvent's certificate of discharge. That is a proceeding now pending in the superior court, with which we have nothing to do, in this case.

The petition of the assignee prayed for an order vacating and annulling the order by which he had been discharged, and also prayed for an order setting aside the insolvent's certificate of discharge. This latter order, it is conceded, the assignee had no right to ask; but the fact that he asked for an order to which he was not entitled was no reason for refusing to vacate the order by which he had been discharged, and, accordingly, the court made such an order, as it had the undoubted right to do, and the effect was to put the insolvency proceeding in the same condition in which it was before the assignee was discharged. (*Rued* v. *Cooper*, decided here August 31, 1893.) No one now questions the validity

or effect of that order, and it, also, like the proceeding by the creditor above mentioned, may be dismissed from further consideration.

Here, then, was the simple and ordinary case of an insolvency proceeding, in which the insolvent debtor has been discharged from the claims of creditors, but the assignee is still actively engaged in the execution of his trust—collecting the insolvent's estate for the purpose of distribution to the creditors. This being the condition of affairs, Hall, the assignee, filed a separate and distinct petition in the superior court having jurisdiction of the insolvency proceeding, alleging that the insolvent had concealed a portion of the property covered by her assignment to him, and praying for an order to her to come into court and submit to an examination touching the matter so alleged. Upon the filing of this petition the superior court made the order prayed for, and this is the order which we are here asked to prohibit the superior court from proceeding under.

The only question to be decided, therefore, is whether a superior court, in which an insolvency proceeding is regularly pending, has the power, on petition of the assignee, after the discharge of the insolvent debtor, to cite and examine the insolvent under section 24 of the insolvent law.

The court in its last opinion says that this latter petition and order " seems to be based upon section 47 of the Insolvent Act." I cannot see why this should be said. Neither the petition nor the order refers to any particular section of any act. The petition states facts which bring the case within section 24, and counsel in their argument rely upon section 24. If this were not enough to give them the benefit of the provisions of that section, it might be suggested that the respect due to the orders and proceedings of the superior courts, and the presumptions in favor of their validity, should prevent us from holding such orders void if there is any law anywhere in the statutes which will sustain them; and even if counsel had relied exclusively upon section

47—as they have not—the action of the court should be sustained if it is fully warranted by section 24.

Section 24 of the Insolvency Act gives to assignees in insolvency the right to take the same proceedings by "citation, examination," etc., against "persons suspected of having concealed or embezzled, conveyed away, or disposed of any property of the debtor," which are authorized by sections 1459–61 of the Code of Civil Procedure, on the part of administrators or executors against persons *suspected* of having concealed or embezzled property of decedents. It does not confer a special jurisdiction over the insolvent debtor, as is done by section 47 of the Insolvency Act, and by section 26 of the National Bankruptcy Act, but a general jurisdiction over *all persons suspected* of concealing or embezzling any portion of the property assigned.

Conceding that by the discharge of the insolvent the court has lost the special jurisdiction over him conferred by section 47 and other provisions of the act, it does not follow that it has lost the general jurisdiction over all persons suspected, etc., conferred by section 24. Indeed, I suppose no one would contend that the court by the discharge of the debtor loses jurisdiction to cite and examine other suspected persons on petition of the assignee, and if the court has this jurisdiction over the rest of mankind, I cannot see any reason why the insolvent himself should be exempt from it. He has the same inducement to conceal and embezzle the property that others have, and as a general thing much better opportunities. The provision is remedial, salutary, summary, and inexpensive, and if anyone has less reason than another to complain of its application, it is the insolvent who is availing himself of the benefits of the law. If he is innocent the examination cannot hurt him; if he is guilty it is right that he should be compelled to divulge the facts. The conclusion of the court, that he alone is exempt from a process to which all the world is subject, cannot be sustained unless the discharge of the insolvent is held to operate as a license to

him to embezzle the estate which he has assigned with
a degree of impunity not enjoyed by any other person.
But clearly his discharge has no such effect.  Its whole
scope is to release him from claims of creditors, and
even as to them it is void if it has been obtained by
fraud, and they may attack it directly or collaterally.
As to the assignee and his claim to the property as-
signed, it has no effect.  If he finds that the debtor has
in his hands property covered by the assignment,
whether concealed or embezzled before or after his dis-
charge, it is the right and the imperative duty of the
assignee to endeavor to recover it for the benefit of the
creditors, and to this end he has and ought to have free
recourse to all the remedies, direct and auxiliary, which
the statute has provided.

The cases cited from the National Bankruptcy Regis-
ter, in the opinion of the court, are not authority for its
conclusion for two reasons: In the first place, the rulings
in the different circuit courts on this point are not uni-
form.    (See decision of Judge Blatchford, *contra*, in
*Matter of Heath*, 7 Nat. Bk. Reg. 448.)    But more im-
portant than this is the fact that the National Bank-
ruptcy Act contains no provision equivalent to section
24 of our Insolvency Law, giving a general jurisdic-
tion over all persons "suspected," etc., to cite and ex-
amine them.    The only provisions of that act appli-
cable to a proceeding like that in question here are
contained in section 26, and they apply to the bank-
rupt alone.    In other words, they confer a special sum-
mary jurisdiction over him which, as was held by the
circuit court in the cases referred to, ends with his dis-
charge.    But this conclusion was based upon a con-
struction of various clauses of section 26, no equivalent
of which is to be found in any part of our insolvency
law.

It is further to be observed that the argument in
favor of this construction, so far as it is based upon the
terms of the law, was not wholly satisfactory to the
author of the opinion, for he seems to have considered

it necessary to reinforce it by an additional argument founded upon the great hardship of holding to a construction that would expose the bankrupt during the remainder of his life to oppressive and vexatious proceedings on the part of his assignee. It is this part of the argument alone which is applicable to the present proceeding, and to my mind it is entitled to very little weight. To hold that an action or special proceeding capable of being used oppressively or vexatiously ought not to exist would lead logically to the abolition of all legal remedies. There is no man living who is not continually exposed to the danger, such as it is, of malicious prosecutions, civil and criminal; that is to say, it is in the power of any maliciously disposed person to put him upon his defense on a trumped-up charge; but this has never been deemed a sufficient ground for depriving individuals of the right to institute actions on their mere volition. And their liberty to do so has not resulted in any great hardship, for the very sufficient reason that few persons care to incur the trouble and cost of commencing a litigation in which they are sure to be defeated, and for which, if they have proceeded wantonly or maliciously, and without probable cause, they are liable to an action for damages.

I think the fear that this particular process might be employed to oppress unfortunate debtors is purely visionary, and, even if there were anything in reason or experience to justify it, I repeat that I cannot see why, when the rest of mankind is subject to it, the one person who has sought the benefits of the law should be alone exempt.