[S. F. No. 5152. In Bank.—August 4, 1911.]

In the Matter of the Estate of ADALINE A. F. RICKS, Deceased. EVA L. RICKS, as Administratrix of the Estate of Thomas F. Ricks, Deceased (Substituted for Thomas F. Ricks), Contestant and Respondent, v. HIRAM L. RICKS, Appellant.

WILL—REVOKING PROBATE—CITATION MUST ISSUE WITHIN ONE YEAR—
VOLUNTARY APPEARANCE IN CONTEST.—As a prerequisite to the maintenance of a contest to revoke the probate of a will, the citation provided for by section 1328 of the Code of Civil Procedure must be issued within a year after probate, and the proceeding should be dismissed for any failure in that respect, if there is no voluntary appearance within a year of all persons entitled to a citation.

ID.—VOLUNTARY APPEARANCE OF PROPONENT AND BENEFICIARY—WAIVER
OF DEFECTIVE CITATION.—An executor of and sole beneficiary under a will, who, with the exception of the contestant, was the sole heir of the decedent, waives the right to object to a defective issuance

or service of the citation, by voluntarily appearing in the proceeding, within two weeks after the institution of the contest, and filing a demurrer as "the proponent and legatee named in the will."

ID.—JUDGMENT AS RES ADJUDICATA—CONTEST OF WILL—PENDENCY OF APPEAL.—Only final judgments can be pleaded or proved as *res adjudicata;* and a judgment, entered upon an order granting a non-suit of a contest of a will, does not become final while an appeal therefrom is pending, or until the time to appeal therefrom has expired.

ID.—CONTEST OF WILL AND CODICIL—AMENDMENT OF CONTEST AFTER YEAR FROM PROBATE.—In a proceeding to revoke the probate of a will and a codicil, in which a judgment is rendered upholding the will, the allowance of an amendment setting up a new ground of contest directed to matters solely affecting the will, is without prejudice to the proponent, notwithstanding such amendment is made more than one year after the probate.

ID.—UNDUE INFLUENCE—PRESUMPTION—SON SOLE BENEFICIARY OF MOTHER.—The fact that the sole beneficiary of a will was the son and business manager of the testatrix does not create a presumption that he abused such relation by unduly influencing the making of the will in his favor.

ID.—DEFINITION OF UNDUE INFLUENCE AND FRAUD.—Undue influence consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating on it; some means taken or employed which have the effect of overcoming the free agency of the testator and constraining him to make a disposition of his property contrary to and different from what he would have done had he been permitted to follow his own inclination or judgment. Fraud, defined generally, consists of false statements or false pretenses, or the employment of any trick or device or means of deception for the purpose of defrauding another.

ID.—DISTINCTION BETWEEN UNDUE INFLUENCE AND FRAUD.—Undue influence and fraud are not identical. The one has reference to the subjugation of the will of the testator and controlling it. The other to a deception practiced upon the testator. While in a sense undue influence is a species of fraud, it may be exercised without any actual fraud, or false representation being made to the testator.

ID.—FRAUD AS ELEMENT IN UNDUE INFLUENCE.—When fraud or fraudulent representations made to the testator are relied on as an element in undue influence, it must appear not only that the representations were false and believed to be true by the testator, but that they were made the basis of importunity and mental pressure upon the testator and that the testamentary act was the product thereof. When this appears, such fraud is an element in undue influence and upon the proof of its employment to overcome the will of the testator, a finding of undue influence may be based.

ID.—FRAUDULENT REPRESENTATIONS VITIATING WILL.—On the other hand, representations which are false, while they may exert an in-

fluence upon the testamentary disposition, unless they are made not only for that purpose, but are used as pressure upon the mind of the testator to affect the disposition of his property, constitutes fraud purely. If the testator, under a belief in the truth of such false statements, and influenced by them, makes a will disinheriting one who, but for a belief in their truth, would otherwise have been provided for in it, the will is the product of fraud on the testator and subject to be declared invalid for that reason.

ID.—FRAUDULENT REPRESENTATIONS NOT WARRANTING FINDING OF UNDUE INFLUENCE.—Undue influence and fraud constitute two separate and distinct grounds, upon proof of either of which a will may be declared invalid, and proof simply of fraud or fraudulent representations will not support equally an issue of undue influence or an issue of fraud.

ID.—FALSE REPRESENTATION THAT SON HAD RELINQUISHED INTEREST IN MOTHER'S ESTATE.—Where a codicil to a will is contested on the grounds of undue influence and fraud practiced by the sole beneficiary on the testatrix, the jury is not warranted, in the absence of any proof of the exercise of undue influence by the beneficiary, in finding that such influence had been exercised by him, merely from evidence that he had made a false and fraudulent statement to the testatrix, who was his mother, to the effect that the contestant, who was another of her sons, had made an agreement to reliquish all interest in her estate.

ID.—EVIDENCE—DECLARATIONS OF TESTATRIX IN PRESENCE OF SOLE BENEFICIARY—ADMISSIONS ON THE TRIAL OF SUCH A CONTEST.—Declarations made by the testatrix, in the presence of the executor and sole beneficiary of her will, to the effect that he had made such a statement to her, taken in connection with the conduct of the beneficiary at the time the declarations were made, in not denying the same, are admissible in evidence as an admission on his part of the fact of making such a statement.

ID.—DECLARATIONS OF SOLE BENEFICIARY.—On such trial, declarations and admissions made by the executor and sole beneficiary of the will are admissible against him to establish any fact in issue upon the validity of the will which they have a tendency to establish, and are not limited solely to the purpose of showing the feelings and relations existing between the parties.

ID.—EVIDENCE OF DECLARATIONS OF BENEFICIARIES UNDER WILL.—While the general rule is that declarations or admissions of one of several executors, devisees, or legatees are inadmissible in an attack on the validity of a will, because the interests of the parties are several and not joint, this rule has no application where this condition of severalty of interests does not exist.

ID.—DECLARATIONS OF TESTATRIX.—The declarations of the testatrix, when not part of the *res gestæ*, are not admissible to prove, nor may they be considered by the jury for the purpose of showing, the exer-

cise of undue influence, although they are entitled to be shown and considered for the purpose of illustrating the state of mind of the testatrix when that state of mind was material.

APPEAL from a judgment of the Superior Court of Humboldt County revoking the probate of a codicil to a will and from an order refusing a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

L. F. Puter, Barclay Henley, and Mahan & Mahan, for Appellant.

Selvage & Cutten, and Knight & Heggerty, for Respondent.

LORIGAN, J.—This was a contest after probate, attacking a will and codicil. At the close of the case of contestant the court granted a nonsuit as to the contest of the will and denied it as to the codicil. Contestant appealed from the judgment on the nonsuit as to the will, which judgment, in an opinion this day filed, has been affirmed. (*Estate of Ricks*, S. F. No. 5246, *ante*, p. 450, [117 Pac. 532].) On the denial of the motion for a nonsuit as to the codicil the trial thereon was proceeded with, resulting in a disagreement of the jury. On a second trial as to said codicil, a verdict was rendered in favor of contestant, and judgment entered revoking and annulling the probate of the codicil. From this judgment and the order denying his motion for a new trial, the appellant, Hiram L. Ricks, who was executor and principal devisee and legatee under the codicil appeals.

The testatrix, when she made her will, dated December 16, 1890, had three sons living, namely: Thomas F. Ricks, the contestant, Hiram L. Ricks, the appellant, and Casper Ricks. Her will bequeathed to Thomas F. Ricks the sum of five dollars and gave the residue of her estate to Hiram L. and Casper S. Ricks in equal shares. Casper S. Ricks died August 7, 1896. The codicil to her will was made November 8, 1901, and recited the fact of the death of Casper S. Ricks, revoked the bequest to him, and gave to Hiram L. Ricks all the property which had been given in the will to Hiram and Casper jointly. Hiram L. Ricks was in the codicil made sole executor.

While the contest filed was directed against the validity

both of the will and the codicil we are concerned on this appeal only with the matter of the contest of the codicil.

The first point urged· by appellant for a reversal is that the court had no authority to entertain the contest because the citation was not issued and served as provided by section 1328 of the Code of Civil Procedure, which provides that: "Upon filing the petition (for revocation of probate), and within one year after such probate, a citation must be issued to the executor of the will, or to the administrator with the will annexed, and to all the legatees and devisees mentioned in the will, and heirs residing in the state, so far as known to the petitioner . . ., requiring them to appear before the court on some day therein specified, to show cause why the probate of the will should not be revoked."

There can be no question but that, as a prerequisite to the maintenance of the contest, the citation provided for must be issued within a year after probate, and the proceeding should be dismissed for any failure in that respect, if there is no voluntary appearance within a year of all persons entitled to a citation. (*Estate of Hite,* 155 Cal. 390, [101 Pac. 8].)

In the matter at bar the superior court on August 28, 1905, when the petition for a revocation of probate was filed, made an order that a citation be issued by the clerk of said court to the executor and all the legatees, devisees and heirs residing in the state, and to all other persons interested in the estate, etc. A citation was issued by the clerk directed to Hiram L. Ricks, by name only, without describing him as executor, devisee, legatee, or heir. He was, however, the executor of both the will and codicil, was the sole devisee named in the codicil, and with the exception of the contestant, was the only legatee thereunder .and only heir of the decedent. There was, therefore, no other person who was entitled to a citation upon the petition for revocation of probate, and the citation was, in fact, served upon him, as shown by the return of the sheriff.

The only objection urged by the appellant as to the citation is that it was not addressed to him in his several capacities as executor, devisee, legatee, and heir of decedent and was not separately served upon him in each of these capacities.

But appellant is not in a position to raise any question of defective issuance or service of the citation upon him on the grounds suggested, because he waived the right to object to

the manner of issuance and service of the citation by voluntarily appearing in the proceeding. (*Abila* v. *Padilla*, 14 Cal. 103.) Within two weeks after the institution of the contest a demurrer was filed on behalf of Hiram L. Ricks as "the proponent and legatee named in the will of deceased." The proponent of a will is the person who offers it for probate. While any person interested in the estate may petition to have the will proved (Code Civ. Proc., sec. 1299), the law contemplates that the one upon whom this duty devolves primarily is the executor named in the will, for it is provided that he may upon failing to petition within a fixed time be held to renounce his right to letters. (Code Civ. Proc., sec. 1301.) And except where the person named as executor desires to renounce his right it is the almost invariable practice for him to file the will with his petition that it be admitted to probate. Therefore, while Hiram L. Ricks had the right to petition for probate in his capacity of executor, or in that of legatee, it is reasonable to suppose, in the absence of any showing to the contrary, that he followed the ordinary and natural course of petitioning as the executor named in the will. When in his demurrer he described himself as "proponent," he was, in effect, appearing as executor. If he had intended to appear in the capacity of legatee alone, there would have been no occasion for the double description of "proponent and legatee." The objection now urged does not appear to have been suggested until appellant filed his answer to the second amended petition, over two years after the contest had been instituted, and after there had been two trials upon the merits. Under these circumstances we are not disposed to view with great favor a plea which is designed to prevent a hearing upon the merits.

As we have stated, the original contest was directed against both the will and codicil. On the first hearing as to both, the court granted a nonsuit as to the contest of the will, and denied it as to the codicil, and directed judgment of nonsuit to be entered accordingly. This order was made October 1, 1907, but the judgment thereon was not signed or entered until February 28, 1908. On February 21, 1908, contestant had filed a second amended petition of contest, answer to which was filed by proponent on March 16, 1908, in which he set up this judgment of February 28, 1908, and relied upon it as an estoppel. He claims now that the judgment of February 28,

1908, denying contestant relief upon one of his causes of action set up in his petition, namely: the contest of the will, was in law an adjudication of both causes of action, including the contest of the codicil, and that it could properly be pleaded as a bar to any subsequent litigation affecting the validity of the codicil. This position is not tenable. Only final judgments can be pleaded or proven as *res adjudicata,* and as the time within which the contestant in that judgment might appeal had not expired when the answer setting up the judgment was filed, the judgment relied on had not become final (*Harris* v. *Barnhart,* 97 Cal. 546, [32 Pac. 589]; *Storey* v. *Storey,* 100 Cal. 41, [34 Pac. 675]; *Brown* v. *Campbell,* 100 Cal. 365, [38 Am. St. Rep. 314, 35 Pac. 433]), and when the issue as to the validity of the codicil was tried and the verdict of the jury rendered, an appeal had already been taken from the judgment pleaded as *res adjudicata* and was pending here.

Complaint is made because the court allowed a second amended petition of contest to be filed after the expiration of one year after probate.

While an amendment which states a new ground of contest may not be permitted unless filed within the year after probate allowed by the code for the institution of such contests (*In re Wilson,* 117 Cal. 262, [49 Pac. 172, 711]) the allegations, claimed to state new matter in the second amended petition which was filed February 21, 1908, referred only to matters affecting the original will, and inasmuch as the appellant has been successful upon the issue relating to that document by the order for nonsuit previously made on October 1, 1907, he could not have been prejudiced by the granting of leave to amend with respect to it.

It is claimed that the demurrer to the amended petition, in as far as it attempted to state a cause of action through the exercise of undue influence should have been sustained. The petition charged both undue influence and fraud on the part of Hiram L. Ricks in procuring the execution of the codicil. While these causes of action were not separately stated, we think there were sufficient allegations as to both.

This contest was based on undue influence and fraud. The undue influence alleged was that Hiram L. Ricks, by reason of his confidential relations with his mother and her absolute

confidence in him, persuaded her to believe that he was entitled to the whole of her property and that of her deceased son Casper S. Ricks; that said representations were false and known to be so by said Hiram L. Ricks when he made them, and that, believing said representations and controlled by them, she made the codicil to her will, disinheriting contestant, which she would not have done had she not believed such false and fraudulent representations to be true.

As to fraud. While the allegations respecting it were not separately stated in the petition, it was evidently intended to allege such a cause for revoking the codicil. And in that regard it was alleged that H. L. Ricks, long entertaining a design to have his mother devise and bequeath all her property to him, falsely represented to her that in a certain partition between the members of the family, had years previous to the making of the codicil, contestant had agreed to take and accept the amount given him in that partition in full and in lieu of any and all right which he might have or which would become his by reason of the death of his mother or his brother; that such representations were false and known to be false by Hiram L. Ricks when he made them, and that the codicil was the product of such false representations and was executed under the belief that they were true.

The court submitted to the jury two questions to be answered by them. The first was Whether the codicil was procured through undue influence exerted on the testatrix by said Hiram L. Ricks, which question was answered in the affirmative. The second question, "Was the codicil . . . to the said will procured to be made through the fraud or fraudulent representations of the said proponent Hiram L. Ricks?" was not answered by the jury.

The appellant, H. L. Ricks, insists that there was no evidence to sustain the finding of the jury of undue influence, and that if there was any evidence supporting the issue, that the execution of the codicil was procured to be made through fraud on his part, the jury failed to find on that issue.

The position of respondent is that the evidence fully sustained the finding of the jury on the issue of undue influence. That in determining that issue the jury had a right to take into consideration such evidence of fraud as was presented and base their finding upon that evidence alone. Before

discussing these points a statement of the evidence is neces-
sary.

On the second trial of the contest as to the codicil much of
the evidence which was introduced by the contestant upon the
first contest of the will and this codicil was again submitted,
with additional and different evidence.   That evidence, as
far as it is necessary to state it for present purposes, shows
these facts: Prior to 1890 Mrs. Ricks and her three sons were
the owners, as tenants in common, of property in Humboldt
County, which, immediately prior to his death, had been
jointly conveyed to them by the husband of Mrs. Ricks and
father of these brothers.   After the conveyance of the prop-
erty it was managed as the Ricks estate, the management
thereof being in the hands of the contestant and Hiram L.
Ricks.   Some dispute arising between these brothers as to the
management of the estate, the contestant insisted on separating
his interest therein from that of the others.   A division was
objected to by the mother and other brothers.   The negotia-
tions in the matter covered several weeks, but the contestant
being insistent upon a division, it was finally agreed on and
consummated, his mother and his brothers conveying to con-
testant certain property, and he conveying his interest in the
remainder to them.   The estate was largely indebted at the
time of the division, and contestant assumed one fourth
thereof.   The deeds between the parties, pursuant to the
division, were made on December 16, 1890, the same day that
the will of Mrs. Ricks was executed.   After the division,
Hiram L. Ricks managed the interests of his mother and him-
self and brother Casper in the property, which they still con-
tinue to hold jointly, and did so up to the death of his mother
on February 26, 1903.   His mother reposed great confidence
in Hiram.   She took little, if any, interest in her business
affairs; she was naturally averse to being burdened with
business cares or the responsibilities thereof, and left these
matters exclusively to the attention of her son Hiram L.
Ricks, as previous to the division she had left them to be at-
tended to by both the contestant and said Hiram.   Her will,
made on the same date the division was had, gave substantially
all her estate to Hiram L. and Casper Ricks.   Casper Ricks
died in August, 1896.   Prior thereto—on April 27, 1896—
he had conveyed all his property to his mother for life, the

remainder to Hiram L. Ricks. Two days after the deed from Casper to his mother and brother Hiram, Mrs. Ricks made a deed conveying all her property to Hiram L. Ricks. This deed was deposited with the cashier of the Bank of Eureka, accompanied by a letter of instruction signed by Mrs. Ricks. This letter instructed the cashier to retain the deed until her death, and thereafter have it recorded and delivered to Hiram L. Ricks and contained the following statement: "My reasons for conveying to him (H. L. Ricks) all of my property described in such deed is because that at the time my son T. F. Ricks withdrew his interest in the Ricks estate and deeds were made to him therefor by myself and my two sons Casper S. and H. L., it was then understood and agreed that he was not to have any share in my property or estate, but that the same was to go to my other sons as I might choose." On November 8, 1901, the codicil involved in this contest was executed by Mrs. Ricks, by which all her property was given to said Hiram L. Ricks. In August, 1903, a serious quarrel occurred between Hiram L. Ricks and this contestant at their mother's residence and in her presence. It appears that the evening previous to the morning when this quarrel took place, contestant had called on his mother and some conversation was had between them about the will and deeds which his mother had made, information about which had come to him from some statements made by Matty Ricks, the wife since deceased, of Hiram L. Ricks. As to what occurred at the quarrel, contestant testified that on that morning he went to his mother's residence to bid her good-bye, as he contemplated a temporary absence from Eureka. As he entered the house Hiram L. Ricks and his mother were talking pretty loud. (Mrs. Ricks was somewhat deaf.) We now quote from his testimony: "They said they were talking about what I was talking about the night before about what Matty said. My mother made that statement. She said something to me about it after that and right at that time. She said that Lam (the familiar name for Hiram L. Ricks) said I agreed not to take any more of the property when we dissolved—when I divided the property that I agreed to that. I said there was no such a thing said at the time. Lam stated there was an agreement at that time, he told my mother, he said there was an agreement of that kind at that time. She said he stated that at the time we dissolved or

divided, Lam stated there that I did say it. I replied after he stated that, that it was a lie, I never made any such agreement at all. That there never was any such agreement. He said there was and we quarreled after that about that agreement; what he said I agreed to do." Independent of what was said by him at the time of the quarrel on the subject of the agreement, contestant testified that there was in fact no agreement or understanding on his part had with his mother or brothers, or any of them, at the time of the division of their property, or at any other time, that he was to relinquish his right to take any portion of the estate of his mother. Hiram L. Ricks testified that there was such an understanding at the time of the division, but denied that he had ever spoken of it to his mother at any time afterward, assigning as a reason, that, as she was fully aware of it, there was no necessity for mentioning the subject to her. As to what occurred at the time of the quarrel, Hiram L. Ricks testified that all that was said there was an assertion on his part that there was such an agreement, a denial of its existence by contestant, and the statement of his mother to contestant that he knew there was such an agreement. The day previous to her death there was a conversation between one of her grandsons, Charles C. Ricks—a son of contestant—and Mrs. Ricks and Hiram L. Ricks. In this interview Mrs. Ricks declared her intention to give Charles ten thousand dollars. Hiram suggested that she give ten thousand dollars to all,—eight thousand dollars to Charles and one thousand dollars each to his two brothers, which was agreed to. Mrs. Ricks then said, "I have not done right by Tom (contestant), he should have more." Whereupon Hiram L. said, "you can give Charlie and the boys whatever you like, but you can't give Tom a cent."

A Mrs. Herrick testified that within a month prior to the death of Mrs. Ricks, when near the residence of the latter, she heard the appellant say: "If you make a change in that property I will law away every dollar of it." This was said in the house and was all she heard.

There was evidence also that Mrs. Ricks had stated to various persons that the contestant had made such an agreement.

From the time contestant withdrew his portion of the Ricks estate, the remainder, which was held in common by Mrs. Ricks, Hiram L., and his brother Casper, was managed,

as we have said, by Hiram L., and he devoted all his time and energy to its management. It was heavily burdened with indebtedness at the time of the division, and from then until the death of his mother Hiram L. Ricks had paid in extinguishment thereof, out of his own personal funds, an amount somewhat exceeding fifty thousand dollars. After the making of the will, and for several years at intervals, the contestant lived with his mother. Hiram L. Ricks was married and maintained a residence of his own. Their mother had her own residence and lived in it up to the time of her death. The relations between the contestant and his mother were always affectionate, as were her relations with all her children. In addition to this testimony was the undisputed showing that the testatrix was at all times, even up to the time of her death, a woman of strong mental and physical powers. She was highly educated, a woman of strong and decided mind; positive in her ideas and opinions. Contestant himself testified that he was not prepared to say that his mother was of a yielding, pliant disposition and could be influenced by anybody; she might be, to save trouble, but it would have to be some strong reason, some strong persuasive force, and that he could not give a single instance where his mother was compelled to do anything which she did not want to do against her will. While disinclined to concern herself with the details of business, leaving them to be transacted by her son Hiram, she was not indifferent in important business matters, but frequently discussed them with her son and others. In this connection she was much distressed about the heavy indebtedness on the Ricks estate, which during the years between 1892 and 1898, when business depression and "hard times" prevailed, threatened the estate with bankruptcy, from which it was saved only through the activity and careful management of Hiram L. Ricks and through aid given by the expenditure of his own personal funds.

The evidence further shows that Hiram L. Ricks knew nothing about the making of her will by his mother until after it was made and handed to him. He was not consulted about its provisions. He had not spoken to his mother about making a will, nor had she spoken to him on the subject. As to the codicil, he knew nothing about her contemplated action in that respect until after it was made.

These constitute the main and principal facts in evidence in the case upon which the verdict of the jury that the codicil was procured through the undue influence of Hiram L. Ricks is based.

A careful consideration of it satisfies us that the evidence does not sustain the verdict on that ground.

In the petition undue influence is predicated upon the charge that confidential relations existed between Hiram L. Ricks and his mother, and that he took advantage of this relation to persuade her to believe that he was entitled to the whole of her property and that of her deceased son Casper L. Ricks. In the opinion filed this day in the matter of the appeal from the judgment on a nonsuit granted in the contest of the will (*Estate of Ricks,* S. F. No. 5246, *ante,* p. 450, [117 Pac. 532])' we considered and discussed the rule as to confidential relations, and upon practically the same evidence as is produced here held that no presumption of an abuse of such relation arose from the mere fact that the relation existed, and that there was no evidence whatever of its exercise by Hiram L. Ricks. Under these circumstances it is unnecessary here to particularly consider the matter with reference to this codicil.

There can be no question but that Hiram L. Ricks would have an influence with his mother—that general influence which an affectionate son, mindful of her comforts and protecting and managing her business interests, would naturally have. But there is not a particle of evidence that he took advantage of this for his own benefit and to the disadvantage of contestant, or for any purpose in connection, with her testamentary disposition of her property. Mrs. Ricks was a woman of intelligence, of strong and decisive mind, and so remained up to the day of her death. The evidence showed that she consulted her attorney in making her will and codicil, and that Hiram L. Ricks, as we have pointed out, had nothing to do with the making of either, and did not know that his mother contemplated making either of them, and knew nothing about them until after they were made. The codicil followed her will as far as any disposition in favor of contestant is concerned. Whatever her reasons were for leaving by her will all her property to Hiram L. and Casper, to the exclusion of contestant, and upon the death of the latter making a codicil leaving all her estate to Hiram, there is no evidence whatever

that she was unduly or at all influenced so to do by Hiram L. Ricks.

It is claimed, however, that even if there was no other evidence showing that Hiram L. Ricks took advantage of the confidential relations existing between himself and his mother to persuade and prevail upon her to make the codicil in his favor, still, under the evidence as to the representation made by him to his mother, that contestant had agreed at the time of the division to relinquish all right or claim he might have to any estate left by her at her death, if the jury found that such representation was made, and was false, such finding was sufficient of itself to support the verdict of undue influence.

We do not think this position is sound. Undue influence consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating on it; some means taken or employed which have the effect of overcoming the free agency of the testator and constraining him to make a disposition of his property contrary to and different from what he would have done had he been permitted to follow his own inclination or judgment. Fraud, defining it generally, consists of false statements or false pretenses, or the employment of any trick or device or means of deception for the purpose of defrauding another. Undue influence and fraud are not identical. The one has reference to the subjugation of the will of the testator and controlling it. The other to a deception practiced upon the testator. In a sense undue influence is a species of fraud, but it may be exercised without any actual fraud, or false representation being made to the testator. One may by constant and persistent importunities and beseechings prevail upon another to make a will in his favor. The will is the result of these importunities, yielded to by the testator for the sake of peace. There may be no element of fraud or false representation in any of these importunities or beseechings. Nevertheless the effect of them has been in a broad sense to coerce the mind of the testator to defraud other heirs who, but for these importunities, would have been the recipients of the bounty of the testator. Upon the other hand, the undue influence may have its foundation in false and fraudulent representations made to the testator. To illustrate, the testator may be informed that the heir, whom otherwise he would have recognized, had

attempted his life. Based upon this false statement are importunities and mental pressure and coercion to exclude the heir because of his attempted crime. Here is presented a double fraud; a direct fraud upon the testator by these false representations, and fraud upon the disinherited heir who, by reason of the undue influence exercised through such misrepresentation, is deprived of the favor and bounty of the testator. In this sense there is always the element of fraud in the exercise of undue influence. If, however, the fraud be merely the fraudulent representation that the heir has attempted the life of the testator and is not accompanied or followed by a successful effort unduly to coerce the will of the testator, we have an example of fraud pure and simple; fraud which will avoid the will but at the same time a fraud in which there is no more element of undue influence than there is in an ordinary fraudulent transaction of every day life between contracting parties. In such a case a finding of undue influence will not be supported by evidence of pure fraud, as, on the other hand, a finding of fraud will not be supported by evidence showing solely the exercise of undue influence. For it is to be remembered that in a contest of a will of a testator on the ground of undue influence or fraud, the law regards only the acts directed against the testator. It is the fraud against the testator and not the indirect resulting fraud against the disinherited heir which the law is considering in an attempt to avoid a will on that ground and it is the undue influence— the coercing of the mind of the testator—and not the indirect but equally resulting fraud against the disinherited heir which alone the law is considering when the charge is on this latter ground. So that when fraud or fraudulent representations made to the testator are relied on as an element in undue influence, it must appear not only that the representations were false and believed to be true by the testator, but that they were made the basis of importunity and mental pressure upon the testator and that the testamentary act was the product thereof. When this appears, such fraud is an element in undue influence and upon the proof of its employment to overcome the will of the testator, a finding of undue influence may be based. On the other hand, representations which are false while they may exert an influence upon the testamentary disposition, unless they are made not only for

CLX Cal.—31

that purpose, but are used as pressure upon the mind of the testator to affect the disposition of his property, constitute fraud purely. Such false representations need not be made to the testator by one who may be benefited by them. They may be made by a stranger. They may be made without any object of affecting the testamentary disposition and solely out of pure malice. If the testator, under a belief of the truth of such false statements, and influenced by them, makes a will disinheriting one who, but for a belief in the truth of such false statements, would otherwise have been provided for in it, the will is the product of fraud on the testator and subject to be declared invalid for that reason. In order, however, that the fraudulent representations may be considered as an element in proof of undue influence, it must appear, not only that they were false and made for the purpose of influencing testamentary disposition, but that they were made the basis of importunity and pressure upon the testator, which he was unable to resist, and which controlled his mind when his will was made. Undue influence and fraud constitute two separate and distinct grounds, upon proof of either one of which a will may be declared invalid, and it is quite clear that if proof simply of fraud or fraudulent representations may support equally an issue of undue influence or an issue of fraud, the distinction between those grounds of contest is obliterated.

In Page on Wills, section 122, it is said: "Fraud is in its nature closely allied to undue influence, and in many cases where the issue to be tried is *devisavit vel non*, it is practically impossible to distinguish the two, as the same evidence often tends to support each charge. The confusion is increased by the theory sometimes expressed by the courts that undue influence is to be treated as a kind of constructive fraud. But, while allied to undue influence, fraud is not the same thing. Undue influence is essentially overpowering the will; fraud is deceit. Such considerations have led courts, where the rules of pleading permit of a distinction between fraud and undue influence in making up the issues, to hold that fraud is not the same thing as undue influence, and that an allegation of the one does not include an allegation of the other."

In *Davis* v. *Calvert*, 5 Gill & J. (Md.) 269, [25 Am. Dec.

282], the court says: "Fraud is a distinct head of objection from importunity and undue influence. Importunity and undue influence may be fraudulently exerted, but they are not inseparably connected with fraud." And in *Eckert* v. *Flowry*, 43 Pa. St. 46, the following language is used: "Now that is undue influence which amounts to constraint which substitutes the will of another for that of the testator. It may be either through threats or fraud, but however exercised it must, in order to avoid a will, destroy the free agency of the testator at the time when the instrument is made." (See, also, *Herster* v. *Herster*, 122 Pa. St. 239, [9 Am. St. Rep. 95, 16 Atl. 342] ; *Gordon* v. *Burris*, 153 Mo. 239, [54 S. W. 546].)

In the *Estate of Snowball*, 157 Cal. 301, [107 Pac. 598], the jury in a will contest had before them the issues of undue influence and fraud. They found affirmatively on the first, and made no response to the second. It was claimed on appeal here that the jury should have found on the second issue, and could not take into consideration to support the first evidence which was given in the case of fraudulent statements made by one of the devisees under the will to the testatrix. It was held that they could. But in that case it appears that the unwarranted accusations made against contestants were used as the basis for and were followed by the persistent importunities on the testatrix to practically disinherit contestants, to which *importunities* she yielded. Clearly this was undue influence exercised by means of fraud.

Under the views announced, in the absence of any proof of the exercise of undue influence by Hiram L. Ricks under his confidential relations with his mother, or at all practiced by him, the jury was not warranted, assuming that they believed he had made a false and fraudulent statement to his mother of an agreement made by contestant to relinquish all interest in her estate, in basing their finding of undue influence thereon. The evidence on this subject of false representations, as it is detailed in the record, could only be considered on the issue of fraud, upon which issue the jury failed to find. It follows, therefore, that on the issue of undue influence the verdict of the jury is not supported by the evidence, and the order denying a new trial must be reversed for that reason.

In view of a new trial, other points made on this appeal are to be considered.

It is claimed that the declaration made by the testatrix at the time of the quarrel,—namely: that appellant had told her at the time of the division that contestant had agreed to take no further part of the property, could not be considered by the jury to establish the fact that he had made such a statement or representation to her. This may be conceded as correct. The jury, however, had a right to take into consideration the conduct of the appellant in connection with the statement of the testatrix as an admission on his part of the facts stated by her. (See *Estate of Snowball,* 157 Cal. 311, [107 Pac. 598].) While the general rule is that declarations or admissions of one of several executors, devisees, or legatees are inadmissible in an attack on the validity of a will, because the interests of the parties are several and not joint (*Estate of Dolbeer,* 149 Cal. 245, [86 Pac. 695]; *Estate of Dolbeer,* 153 Cal. 662, [96 Pac. 266]), this rule has no application where this condition of severalty of interests does not exist. This is the situation here; the appellant being the sole executor, devisee, and legatee, his interest alone could be affected by either his admissions or his declarations. Our code (Code Civ. Proc., sec. 1870, subd. 3) provides that: "An act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto" may be given in evidence. The statement of the testatrix at the time of the quarrel between the brothers,—namely, that Hiram L. Ricks had told her of such an agreement at the time the division was made, was made in his presence. If it was not true it called for a denial by him. As it was not denied, it was only natural to consider it as an admission of the truth of the statement by the only one to be affected by it—an acquiescence in the truth of the fact stated, implied from his conduct in allowing it to go unquestioned.

And if the jury believed the testimony of contestant as to what occurred at the quarrel they had a right to treat this admission of the appellant—sole beneficiary under the codicil —as proof of the fact itself that he had told his mother what she stated he had at the time she said he did, and to consider. it as bearing directly on any issue before the jury to which it was relevant.

As to the express declarations of Hiram L. Ricks, they were admissible for the same general reason. The same code sec-

tion referred to (subd. 2 thereof) declares that evidence may be given of the "act, declaration or omission of a party as evidence against such party." Hiram L. Ricks was a party to the proceeding and the sole party in the attack on the validity of the codicil whose interests would be affected by the admission in evidence of his declaration, so that the general rule against the admission of the declarations of one of several executors, devisees, or legatees, where their interests are several, has no application.

Nor was the appellant entitled to have the jury instructed that his declarations were admissible and could be considered only by the jury for the purpose of showing the feelings and relations existing between the parties. The admissions and declarations against interest of the sole beneficiary are admissible to establish any fact in issue upon the validity of a will which they have a tendency to establish and are not subject to the limitation appellant claims for them.

As to the declarations of testatrix, the court recognized and observed in instructing the jury the well-established rule that when such declarations are not part of the *res gestæ* they are not admissible to prove, nor may they be considered by the jury for the purpose of showing, the exercise of undue influence, although such declarations were entitled to be shown and considered for the purpose of illustrating the state of mind of the testatrix when that state of mind was material. (*In re Calkins*, 112 Cal. 301, [44 Pac. 577]; *Estate of Arnold*, 147 Cal. 593, [82 Pac. 252]; *Estate of Thomas*, 155 Cal. 488, [101 Pac. 798]; *Estate of Snowball*, 157 Cal. 301, [107 Pac. 598].) The court instructed the jury that "Upon the question of undue influence, statements of the testatrix made either before the execution of the codicil or after, and which tend to throw light on her condition of mind, her feelings and affections for her sons and her relations with them, are admissible for this purpose. But as proof of undue influence, the evidence of such statements are hearsay and incompetent and should not be considered by you. They afford no substantive proof of undue influence and cannot be admitted for such purpose, and before contestant can recover on the ground of undue influence it is necessary that he should prove that undue influence was in fact actually exerted upon the testatrix by other evidence than her own declarations." The dec-

larations and statements of the testatrix had a tendency to illustrate ·her relations to her children, her feelings towards them and her condition of mind or belief as to their respective claims or rights to participate in her estate, and the instructions properly and clearly limited the jury to a consideration of the statements or declarations of testatrix for this purpose alone.

The judgment and order appealed from are reversed.

Henshaw, J., Shaw, J., Angellotti, J., and Melvin, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing and filed the following opinion on September 7, 1911:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause because in my opinion there was evidence in support of the contest of the codicil, which if true was sufficient to warrant the finding that its execution was procured by undue influence. Whether this evidence was true or not was a question for the jury. Evidently they believed it, and disregarded the conflicting evidence.