[S. F. No. 11081. In Bank.—January 15, 1926.]

In the Matter of the Estate of LEON MORRISON, Deceased. STATE OF CALIFORNIA et al., Appellants, v. MARION SCOTT, Respondent.

[1] WILLS—CONTEST—ORDER OF PROOF—WAIVER OF OBJECTION.—In a will contest the order of proof is a matter within the direction of the trial court; and where the proponent of a holographic will, as part of her case in chief, after identifying the handwriting as that of the deceased and testifying fully as to the circumstances under which she received the document, and after she had submitted to a lengthy cross-examination by contestants, produces further witnesses who, without objection from contestants, give corroborative testimony tending to prove the authenticity of the document, and said witnesses are exhaustively cross-examined by contestants, whereupon the presentation of proponent's *prima facie* case is closed, a motion to strike out the testimony of such further witnesses, on the ground that the offer and admission of such evidence was not in accordance with the orderly procedure to be followed in the trial of contests of wills, is properly denied.

[2] ID.—PROOF OF WILL—DECLARATIONS OF TESTATOR—LIMITATION OF TESTIMONY.—Said further witnesses having been permitted, as part of proponent's case in chief, without objection from contestants, to testify as to the circumstances under which the decedent, shortly before his death, came to show them the writing offered for probate and to testify that the decedent had stated that it was his "last will and testament," the trial court properly refused contestants' request, made after the presentation of proponent's *prima facie* case and after contestants had introduced considerable evidence, that the testimony of said further witnesses of proponent should be limited solely to the matter of the identification of the proffered writing.

1   See 28 R. C. L. 400.

[3] ID. — DECLARATIONS OF TESTATOR — AUTHENTICITY OF PROFFERED WRITING.—In said will contest, the testimony of said further witnesses of proponent, both as to the identity of the document offered by proponent as an authentic document and as to the decedent's statement made at the moment of its production by him for the inspection of said witnesses, to the effect that it was his last will, was legally admissible and was not subject to the objection that it should be limited solely to the matter of the identification of the proffered writing.

[4] ID. — DISPUTED HANDWRITING — CONFLICTING OPINION EVIDENCE — DECLARATIONS OF TESTATOR.—In a will contest, where the only evidence offered by contestants, aside from their attempt to discredit proponent's witnesses, is confined to the offer of expert testimony upon the subject of decedent's handwriting, and upon this subject the testimony of these opinion witnesses, *pro* and *con*, is sharply conflicting, it is not error for the trial court, after the presentation of such opinion evidence, to permit lay witnesses for proponent to testify to the effect that the decedent had declared to each of them a short while before he died that he had made a will and left his money to proponent.

[5] ID.—OPINION EVIDENCE—RESTRICTION OF TESTIMONY—MISCONDUCT OF TRIAL JUDGE.—In this will contest, which was tried by the court sitting without a jury, there was no merit in the contention that the trial judge unduly curbed or restricted the testimony of certain handwriting experts called as witnesses for contestants or indicated a disposition not to give an open-minded consideration to such of the testimony of said witnesses as was relevant to the inquiry.

[6] ID. — DATE OF EXAMINING WRITING — CHANGE OF TESTIMONY — REFERENCE TO LETTER.—In such will contest, the trial court did not err in permitting a handwriting expert called as a witness for proponent, and who had testified as to a particular date when he first saw and examined the disputed will, to change his testimony as to said date after consulting a letter which he drew from his pocket and handed to the court at its request for inspection, but which letter was not put in evidence, where the episode occurred within the observation of contestants' counsel, who made no comment upon the same at the time and made no request either for an inspection of the letter or for its presentation in evidence.

(1) 4 C. J., p. 815, n. 67, p. 816, n. 68; 40 Cyc., p. 1330, n. 27. (2) 40 Cyc., p. 1331, n. 32.   (3) 38 Cyc., p. 1392, n. 16; 40 Cyc., p. 1313, n. 14.   (4) 40 Cyc., p. 1313, n. 15.   (5) 4 C. J., p. 956, n. 38.   (6) 22 C. J., p. 721, n. 59 New.

4.  Admissibility of evidence as to declarations of testator, notes, 3 Am. Dec. 395; 107 Am. St. Rep. 459. See, also, 26 Cal. Jur. 736, 737.

APPEALS from an order of the Superior Court of Alameda County admitting will to probate. Stanley Murray, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Frank L. Guerena, Deputy Attorney-General, L. B. Browne, E. E. Gering, L. Gonsalves and Glickman & Glickman for Appellants.

H. L. Hagan and Milton T. U'Ren for Respondent.

RICHARDS, J.—There are in this proceeding three appeals from a judgment of the superior court in and for the county of Alameda admitting to probate an instrument alleged by the respondent to be the last will and testament of Leon Morrison, deceased, and by the terms of which the said respondent, Marion Scott, was made the sole devisee and legatee of said decedent. There were three separate contestants against the admission of said will to probate and three separate appeals, but by stipulation between the parties these several contests and appeals were presented upon a single record and upon briefs filed by the contestant, State of California.

Leon Morrison died in the county of Alameda, state of California, of which county he was a resident, on June 20, 1921, leaving a considerable estate therein, consisting principally of two clothing stores in the city of Oakland, which since the inception of proceedings for the administration of his estate have been converted into cash. The record herein shows that shortly after the death of said decedent the respondent herein commenced a proceeding in said court for the probate of a lost or destroyed will of said decedent under the provisions of sections 1338, 1339 of the Code of Civil Procedure, but later dismissed said proceeding, whereupon the public administrator was appointed the administrator of the estate of said decedent. Several months thereafter the respondent produced and filed for probate the instrument alleged by her to be the decedent's last will and testament, the validity of which has been put in issue

by the contestants herein. The said instrument is in the
form of a holographic will and reads as follows:

"Oakland, Cal.

"Janry 12, 1921.

"At my death I give all my property to my dear friend
Marion Scott.

"L. MORRISON."

The three contestants herein are respectively Mordko Grulin
Grysolet, who alleges himself to be a brother and heir
at law of the deceased; L. Soshokoff, who alleges himself to
be a nephew and heir at law of said deceased; and State of
California, which alleges that the decedent left no heirs.
The opposition of each of the two contestants who aver them-
selves to be heirs of said deceased is based upon the follow-
ing grounds, viz.: that said pretended will is void because
not made or executed by the decedent nor written, dated
or signed in his handwriting; that at the time of the alleged
signing of said instrument said Leon Morrison was not of
sound and disposing mind; that if said pretended will was
executed by said decedent it was while he was under undue
influence and was also laboring under an insane delusion.
The opposition of the State of California to the admission
of said instrument to probate is based upon its denial that
the decedent left any will and upon its further denial that
said alleged will is the last or any will of said decedent. To
each of these several contests the proponent of said will filed
her answer denying the averments thereof. The issues as
thus framed came on for trial in said court and before
Honorable Stanley Murray, sitting as judge *pro tem.* therein,
whereupon the proponent of said document offered the same
in evidence and in support of said offer was sworn as a wit-
ness and testified that the said instrument was in the hand-
writing of the decedent. She further testified that the
first time she had seen said document was upon a date several
months after the death of said decedent when she had re-
ceived the same through the mail and in an envelope ad-
dressed to herself. After being submitted to a lengthy cross-
examination by the contestants as to the circumstances under
which she had received said document and as to her sources
of knowledge as to the decedent's handwriting, the obvious
purpose of which was to break down the proponent's story
as to the circumstances under which the document in ques-

tion had been received by her, and also to destroy the value of her testimony that the instrument was in the handwriting of the decedent, the proponent produced two further witnesses, whose names were John W. McKenzie and Barney A. Hoffman. The first of these testified that during the months of May and June, 1921, he was a nurse at the Fabiola Hospital in Oakland during the period when Leon Morrison was a patient in said hospital and that he met and ministered to Mr. Morrison frequently in a professional way. The witness was then shown the document purporting to be the will of Mr. Morrison and was asked whether he had ever seen it before, to which he testified that he had and that it was the paper which Mr. Morrison had shown him at the Fabiola Hospital on the evening of the 16th of June, 1921, while the former was a patient there. He further testified that Hoffman, who was also a nurse, was present when he was shown said paper; and he identified said document as being the same paper which was shown to himself and Hoffman by Morrison himself at said time. He further recited in detail the circumstances under which the paper had been exhibited to him by Morrison, stating that on the evening of said day while in the toilet of said hospital, to which said Morrison had been assisted by himself and Hoffman, Morrison had taken from his pocket said paper and handed it to him, saying, "Mac, do you want to take a look at this? This is my last will and testament." The witness stated that he looked at the paper and examined it curiously because, as he said, "It seemed odd for anybody to hand me anything of that kind." He then passed it to Hoffman, who also examined it and handed it back to the witness, who in turn handed it back to Mr. Morrison, who folded it up and put it in his purse. Having so testified fully to the circumstances under which the witness had been shown said paper and to the statement made by Mr. Morrison regarding the same while in the act of handing said paper to him for his inspection, and having done so without objection of any kind on the part of the contestants, or any of them, the witness McKenzie was subjected to an exhaustive cross-examination by counsel for each of said contestants, during which every incident in connection with said episode was made the subject of scrutiny. The witness was then excused, whereupon the other witness, Hoffman, was called by the proponent

and similarly examined, without objection, and testified to the same circumstances and the same language used by the decedent; and he also was exhaustively cross-examined by counsel for the contestants. [1] It was not until the examination and cross-examination of the witness Hoffman had been concluded and the proponent had closed the presentation of her *prima facie* case that counsel for the contestants undertook to voice any objection whatever to the testimony given by McKenzie and Hoffman, or any portion thereof; and the objection thus tardily urged was not to any particular portion of the evidence given by these two witnesses, but was to the whole thereof upon the ground that the offer and admission of such evidence was not in accordance with the orderly procedure to be followed in the trial of contests of wills. The trial court overruled said objection and apparently did so properly upon the authority of *Estate of Latour,* 140 Cal. 414–437 [73 Pac. 1070, 74 Pac. 441], wherein it was held that the order of proof in such cases was a matter within the discretion of the trial court. The cause then proceeded, the contestants introducing a number of witnesses for the purpose apparently of impeaching the credibility of the proponent and her two witnesses. [2] After evidence of this sort had been presented, occupying over one hundred pages of the printed record, counsel for the contestants again undertook to question the admissibility of the testimony offered by the witnesses McKenzie and Hoffman, and then for the first time presented the objection that while the testimony of these two witnesses was competent as to the identification of the offered paper, the accompanying declaration of the testator was not admissible as to whether or not it was his will. The court overruled said objection, whereupon contestants moved the court to limit the testimony of these two witnesses solely to the matter of identification. The court, however, permitted the testimony of these witnesses to stand "for what it is worth," and the point that the trial court was in error in these rulings is the first point of error urged upon this appeal. [3] It is our opinion, as above indicated, that the contestants' objection to the evidence of these two witnesses came too late; and also that the tardy request of the contestants that the effect of the said evidence should be limited solely to the matter of identification came also too late; but were it otherwise

we are further of the opinion that the testimony of these two witnesses, both as to the identity of the document offered by the proponent as an authentic document and as to the decedent's statement made at the moment of its production by him, for the inspection of these witnesses, to the effect that it was his will, was legally admissible and was not subject to the objection which the contestants now strenuously urge against its admissibility.

The circumstances of this case are peculiar. The offered will of the decedent was a holographic will, the existence of which the proponent had reason to surmise, but the whereabouts of which was unknown to her until the receipt of it through the mails several months after the death of the testator. A direct attack was made by all of the contestants upon the authenticity of the document; and while the proponent might possibly have contented herself with the proof offered by herself as a witness to the decedent's handwriting, there would seem to be some justification for her attempt to show, as a part of her *prima facie* case, that the document offered had been seen in the possession of the decedent a few days before his death and that with direct reference to it the testator had designated this particular instrument as "his last will." The three cases upon which the appellants chiefly rely in support of their objection to the inadmissibility of the said declaration of the testator do not in our opinion apply to such a situation as is here presented, for the reason that the declarations of the testator made at the moment of submitting to the scrutiny of these two witnesses the identical document here produced as the last will of such decedent were part of the *res gestae,* or, in other words, of the immediate transaction to which said witnesses were testifying, viz.: their identification of the offered instrument as an existing document at the time of its presentation to them for inspection by the testator. In *Estate of Gregory,* 133 Cal. 131 [65 Pac. 315], no such evidence was offered and no such question presented. The same may be said in *Estate of Thomas,* 155 Cal. 488 [101 Pac. 798], both of which cases we shall submit to a closer scrutiny at a later point in this opinion. In the case of *Throckmorton* v. *Holt,* 180 U. S. 552–573 [45 L. Ed. 663, 21 Sup. Ct. Rep. 474, see, also, Rose's U. S. Notes], it was conceded that evidence touching the identity of a certain document would be admis-

sible when part of the *res gestae.* As illustrating this exception to what the rule in that case states to be the otherwise general rule the court cited the case of *Burge* v. *Hamilton et al.,* 72 Ga. 568. This was a case where a testator during an interview with his legal adviser attending the making of a codicil to his will, and with the original will in his hand, identified the same and the several pages thereof as and declared the same to be the original will; and the court upheld the admissibility of the testator's declarations to that effect as going directly to the identification of the particular document as the will of the testator and as part of the *res gestae.* In so doing the court in the case of *Burge* v. *Hamilton, supra,* exhaustively reviewed the authorities, in the course of which it cited with approval the case of *Gould* v. *Lakes,* 6 L. R. (P. D.), page 1, wherein it was held that the statements of a testator with reference to the constituent parts of an instrument purporting to be his will were admissible, citing *Sugden* v. *Leonard,* 1 L. R. (P. D.) 154. The foregoing cases in principle have direct application to the question presented by the case at bar. For both of the foregoing reasons we are of the opinion that the testimony of the witnesses McKenzie and Hoffman as a whole was properly before the court and hence that the court committed no error in its refusal to grant the appellants' belated motion to strike out such testimony or to limit the application thereof.

[4] A more serious question is presented with respect to the rulings of the trial court in the admission of the testimony of the witnesses Collins, Caufield, and Sterne under the following circumstances, and at a later stage of the trial. After the contestants, in support of their assertion that said document offered as the decedent's last will was a forgery, had presented much testimony on the part of expert witnesses as to the handwriting of the deceased for the purpose of showing that said instrument was not in his handwriting, the proponent presented a witness named Charles F. Collins, who was a fellow inmate with Morrison at the Fabiola Hospital, and who was asked to relate a conversation between himself and Morrison wherein mention of a will was made by Morrison. The witnesses, over objections by the contestants, testified that Morrison in that conversation said that he had made a will and left his entire estate to Miss Scott. The

objection urged by one of the counsel for the contestants
to the admissibility of this evidence was in the following
form: "I object on behalf of the heirs on the ground that
this is incompetent, irrelevant, immaterial and hearsay as
declarations inadmissible to show the contents of the will";
to which the court responded, "It doesn't appear to me that
way. It may be a circumstance to show that there was a
will; objection overruled." At the conclusion of the testi-
mony of the witness, counsel for contestants moved to strike
from the record all of the testimony of Collins upon the same
ground and also upon the ground that it was "inadmis-
sible to prove the existence of any will at any time or at
that time." The court denied said motion. Similar evi-
dence was also offered by two other witnesses, Martin Cau-
field and Albert Sterne, to which similar objections and simi-
lar rulings were made. The contestants urge upon this
appeal that the testimony of these three witnesses was in-
admissible over their said objections, and cite in support
of their said contention the same line of authorities which
were cited by them in support of their effort to have ex-
cluded or limited the testimony of the witnesses McKenzie
and Hoffman. In most of these cases, however, the question
of the admissibility of the declarations of a decedent as to
whether he had made or had not made a will arose in pro-
ceedings where the issue of fraud or menace or undue influ-
ence was involved, as in the case of *In re Calkins*, 112 Cal.
296 [44 Pac. 577], and also *Estate of Gregory*, 133 Cal. 131
[65 Pac. 315], wherein the contestants' specification was to
the effect that the proponents of the decedent's later will
had procured her signature to the same while she was in
an intoxicated condition. The court in the Gregory case
elaborated upon and followed the rule laid down in the
Calkins case to the effect that the declarations of a decedent
were inadmissible upon the issue of undue influence; and
after doing so undertook in a sentence to give application
of the same doctrine to cases wherein the issue of forgery
was involved. In *Estate of Arnold*, 147 Cal. 583–594 [82
Pac. 252], wherein the only issues involved were those of
fraud and undue influence, this court held upon the authority
of *In re Calkins* and *Estate of Gregory, supra*, that the
declarations of the testator when not part of the *res gestae*
were not admissible as narrations of the exercise or effect

of undue influence. In *Estate of Thomas,* 155 Cal. 488–494 [101 Pac. 798], wherein the sole issue involved in the contest of the decedent's offered will was that it was a forgery, this court upheld the action of the trial court in permitting the admission of declarations of the alleged testator as to the existence within his knowledge of certain facts which were, if known by him, contrary to the recitals contained in the disputed will to the effect that such facts were not known to him at the time of the alleged making of the contested will. This court in passing upon this question cited *Estate of Gregory* and *Estate of Arnold, supra,* as to the correctness of the rule as applicable to that class of cases; and also cited *Throckmorton* v. *Holt, supra.* In so doing, however, the court stated that there was a strong counter-current of authority "by which it was held that where the issue is forgery declarations of the testator *even as to his testamentary* intent, though forming no part of the *res gestae* will be received as tending to prove the issue." In *Estate of Snowball,* 157 Cal. 301 [107 Pac. 598], wherein the sole issue was that of undue influence, the court reaffirmed the rule approved in *Estate of Arnold, supra,* but held that even in such a case the declarations of the decedent showing her state of mind and mental attitude toward the various objects of her bounty were admissible and might be legitimately considered by the jury if limited in the instructions of the court to that purpose. In *Estate of Ricks,* 160 Cal. 467–485 [117 Pac. 539], the court approved the rule laid down in *Estate of Snowball, supra.* In *Estate of Gleason,* 164 Cal. 756–762 [130 Pac. 872], wherein also the sole issue was that of undue influence, the court held that the declarations of a testator as to his state of mind at the time of the execution of his will when not part of the *res gestae* were inadmissible, citing a number of the cases above referred to and among them *Estate of Gregory.* In *Estate of Carson,* 184 Cal. 437 [17 A. L. R. 239, 194 Pac. 5], involving the issue of undue influence, the subject was somewhat remotely considered and the doctrine in the Arnold case generally approved. In *Estate of Sweetman,* 185 Cal. 27 [195 Pac. 918], the issues involved arose out of an attempt on the part of the proponents to probate a lost or destroyed will, the immediate question presented being as to whether such will was in existence at the date of the death of the decedent.

Evidence was offered and admitted as to the declaration of the decedent made three days before her death that a certain will theretofore executed by her was in existence. The admissibility of this evidence was conceded, but the court divided as to the effect of its admission as overcoming the presumption which arises when a will cannot be found that it has been destroyed *animo revocandi*. This case is here cited not for the purpose of showing that the court therein passed upon the question of the admissibility of such evidence, but of showing the propriety of recourse to this class of evidence when the direct issue is as to whether a certain document alleged to be the decedent's will was in existence prior to his death or was a later creation. In the light of the foregoing review of our previous decisions it cannot be said that the immediate question herein presented has been definitely decided. This much, however, may be said, as was said in the *Estate of Thomas, supra,* that "there is a strong current of authority by which it is held that where the issue is forgery, declarations of the testator even as to his testamentary intent, though forming no part of the *res gestae,* will be received as tending to prove the issue." The question at the last analysis largely depends upon the circumstances of the particular case. It must be conceded that the circumstances of the instant case are peculiar, since while the contestants herein, or some of them, at least, alleged as grounds of contest that the will in question was the product of undue influence and also of an insane delusion on the part of the testator, these grounds of contest were upon the trial wholly abandoned by the contestants, and the only evidence offered by them, or any of them, aside from their attempt to discredit the proponent's witnesses, was confined to the offer of expert testimony upon the subject of the decedent's handwriting. Upon this subject the testimony of these opinion witnesses, *pro* and *con,* was sharply in conflict. In this state of the case, and after all of such expert testimony had been presented, the trial court permitted the introduction of the testimony of the three above-named witnesses for the proponent to the effect to that the testator had declared to each of them a short while before he died that he had made a will and left his property to the proponent herein. An instructive and persuasive case bearing upon an almost identical situation is that of *Hoppe* v. *Byers,* 60

Md. 381. In that case, as in this, the sole question was whether the proffered document offered for probate was in the handwriting of the decedent or was a forgery, and the only direct testimony upon that issue was the testimony of handwriting experts. In such a state of the case the contestants offered in evidence the declaration of the decedent made to his wife a few days before his death "that he had made no disposition of his property, and that the law made for him the only will he wished; that she would get a good part of his property and the balance would go to his grandchildren." In upholding the admission in evidence of this declaration on the part of the alleged testator the supreme court of Maryland said: "There was no witness that could prove that he saw the deceased write or sign it. Proof as to his handwriting by witnesses acquainted with it was the only direct testimony by which the genuineness of the instrument could be established or assailed. Such testimony was offered, and we infer from the record that a large number of witnesses, and perhaps an equal number on each side, testified upon this subject, those for the caveators swearing that to the best of their knowledge and belief the writing was not, and those for the caveatees that it was, the handwriting of the decedent. The jury had also before them on the same paper the admittedly genuine part of the letter and were at liberty to compare this with the disputed writing. But in this state of case was no other evidence admissible? Were the jury bound to decide the issue and make up their verdict upon such testimony alone, and do the rules of evidence inexorably exclude from their consideration every other fact or circumstance that would tend to throw light upon the subject, so as to render it probable or improbable that such a paper was ever written by the deceased, or in corroboration of the direct testimony as to handwriting given on either side? We think not. It must be admitted that testimony as to handwriting, in any case of alleged forgery, though the best the nature of the case admits of, is usually the most unsatisfactory species of evidence courts of justice have to deal with. It is matter of common experience in such cases that witnesses of equal honesty and character, and with equal means of knowledge, are found to testify both for and against the genuineness of the disputed signature. The difficulty and doubt are increased in a case like

the present, where the instrument alleged to be forged is set up as a will which takes effect only after death, and where a forgery, if committed, would rarely, if ever, come to the knowledge of the party whose testament it purports or is said to be. It seems to us that in such a case every collateral fact and circumstance which is not clearly immaterial and irrelevant ought to be admitted, to aid the jury in reaching the truth, which after all is the object of every jury trial.'' The foregoing decision and the reasons which are given to support it has been cited with approval by a number of other states in decisions made since its rendition and the doctrine therein declared, with notes embracing these decisions, has been embodied in the text of the following authors in the editions of their works on evidence issued or revised since the decision of the Maryland case: See 1 Greenleaf on Evidence, 16th ed., pp. 57, 81, 261; 4 Chamberlayne on Evidence, sec. 2649; Chase's Stephens Digest of Law of Evidence, 2d ed., p. 100; 1 Elliott on Evidence, sec. 533; 1 Wigmore on Evidence, 2d ed., sec. 112; 3 Id., secs. 1735, 1736. In the author's note to Wigmore on Evidence, section 112, *supra,* the case of *Hoppe* v. *Byers, supra,* and the later decisions of other states adopting its doctrine are cited at length and the case of *Throckmorton* v. *Holt, supra,* which indicates a different rule, is criticised as against the weight of authority and as ''a lonesome decision.'' In the comparatively recent case of *State* v. *Ready,* 78 N. J. L. 599 [28 L. R. A. (N. S.) 240, 75 Atl. 564], it was held in a case involving a prosecution for the forgery of a will that evidence was admissible of the declarations of a testator indicating an intent to execute a will of the tenor of that alleged to have been forged if made at a period not so remote from the date of the will as to render them immaterial, citing in support thereof 3 Wigmore on Evidence, *supra,* as stating the correct rule. From this *résumé* of the most recent authorities touching this subject and the comment of the standard text-writers thereon we are satisfied that under the limitations stated in the foregoing excerpts from *Hoppe* v. *Byers, supra,* and under the circumstances of this particular case the declarations of the testator that he had made a will and had named therein the proponent herein as his sole beneficiary were admissible in evidence as tending to show the existence of such a document prior to the death of the decedent.

The remaining contentions of the appellants herein relate to a large number of alleged errors and irregularities on the part of the trial judge occurring during the trial of the cause. The trial of the cause was had before the court sitting without a jury. It occupied several weeks, and the record thereof and of the evidence taken therein is embraced in four bulky volumes containing more than one thousand pages of typewritten testimony and numerous exhibits. The appellants herein have furnished us with no appendix to their briefs and with but one opening brief wherein the irregularities complained of are recited and commented upon in a space of fifty pages largely taken up with comment and with only brief and disconnected excerpts from the testimony. With respect to many if not most of these alleged errors and irregularities it would be impossible to estimate their seriousness without recourse to a much more extended review of the record than the appellants have seen fit to assist us in making. We have, however, sufficiently examined the record to conclude that the contentions of the appellants as to the rulings and conduct of the trial judge are not sufficiently well founded to justify a reversal of the case. A few examples will suffice. [5] The appellants criticise the trial court for certain occasional interruptions and possibly strictures of the trial court made during the giving of the testimony of the handwriting expert witness Heinrich, called on behalf of the contestants. The testimony of the witness Heinrich in chief occupies fifty-four pages of the reporter's transcript, during the course of which the witness was given the utmost latitude in stating his conclusions as to the authenticity of the disputed will based upon comparisons with admittedly genuine specimens of the testator's handwriting, and also in giving his views as to the peculiarities and divergencies of different schools and systems and national traits in handwriting. The efforts of the trial judge to confine the witness' outflow of opinion to the limits prescribed by section 1944 of the Code of Civil Procedure were only occasional, and did not, in our opinion, evince any disposition to unduly curb or discredit the testimony of this witness or discount the proper degree of weight to be accorded to it. The same thing may be said as to the testimony of the witness Eisenschimel, whose testimony in chief, covering substantially the same ground as the former

witness, occupied forty-five pages of the reporter's transcript. The trial judge did, at the outset of this witness' testimony, make an effort to abbreviate his examination in chief with the suggestion that after he had given his conclusions that the will was a forgery his reasons therefor might well be left to be developed upon cross-examination; but this course was not followed, and the witness proceeded to testify with great fullness, going far beyond the code limitation in theorizing upon handwriting in general. Some of these excursions the court very properly checked, but his course in so doing did not, in our opinion, indicate any disposition not to give an open-minded consideration to such of the witness' testimony as was relevant to the inquiry. [6] With respect to the testimony of the witness McGovern, called for the proponent, the appellants complain at the action · of the court in permitting the said witness to change his testimony as to a particular date when he first saw and examined the disputed will after consulting a letter which he drew from his pocket and handed to the court at its request for inspection, but which letter was not put in evidence. The episode occurred within the observation of contestants' counsel, who made no comment upon the same at the time and made no request either for an inspection of the letter or for its presentation in evidence. Their later urged objection to the action of the trial judge in the premises was evidently an afterthought. It would unduly lengthen this opinion to pursue the subject further. Looking to the record as a whole it would seem that the trial judge distributed his comments and suggestions freely and rather impartially among the several handwriting experts on both sides of the case, frequently asking questions and displaying a very decided and intelligent interest in the subject of handwriting, to which he stated he had given considerable study. That the trial judge did occasionally, as the case dragged its weary length toward its conclusion manifest impatience with the prolongation and prolixity of the examination of the witnesses for both sides of the case is true; but this is not unusual during trials, and was in the main in this case justifiable. We do not find that his action throughout or in so doing either interfered with a full presentation of the evidence or disclosed an attitude of partiality or prejudice in respect to the merits of the case. With the question as to

whether the trial judge ruled rightly upon the motion of the contestants to disqualify him from participation in the hearing upon motion for new trial we are not concerned, since the appellants concede that it rested in his own power and discretion to decide the question of his own disqualification; and the correctness of his ruling in that regard is not contested upon these appeals.

The judgment is affirmed.

Shenk, J., Cashin, J., *pro tem.*, Seawell, J., Lennon, J., and Waste, C. J., concurred.