[S. F. No. 13073. In Bank.—November 20, 1928.]

MAUD SCOTT, Petitioner, v. SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

Wm. J. Cullinan and Stanley C. Burke for Petitioner.

Leo R. Friedman and Robert E. Fitzgerald for Respondents.

WASTE, C. J.—Petitioner seeks a writ of mandate to compel the respondent court and judge to grant a motion, duly made in the court below, for substitution of attorneys in proceedings relating to the probate of the last will and testament of Leon Morrison, deceased. █ An alternative writ was granted, and the respondents interposed a general and special demurrer to the petition and, at the same time, filed an answer by way of return to the writ. Petitioner thereupon asked leave to file a reply or answer to the return. It was received over the objection of the respondents, subject to a reserved decision whether or not it should be filed.

The right of the petitioner to file such a reply or answer to the return is well settled. In a proceeding for *mandamus,*

"on the trial, the applicant is not precluded by the answer from any valid objection to its sufficiency, and may countervail it by proof either in direct denial or by way of avoidance." (Code Civ. Proc., sec. 1091; *McClatchy* v. *Matthews,* 135 Cal. 274 [67 Pac. 134].) Petitioner's reply to the answer and return is, therefore, ordered filed. It may have little "evidentiary value" in controverting the allegations of the return, as is contended by the respondents, but that fact does not prevent its consideration by the court for whatever it may be worth.

We deem it unnecessary to specially consider the contentions raised by the specifications of the special demurrer, that the petition here is uncertain, ambiguous, and unintelligible. The points thus raised which are worth considering relate to matters reached by the general demurrer. The others relate to facts, some of which are matters of record, and all of which are easily ascertainable, if an amendment were deemed necessary. They do not appear of sufficient importance to prevent an immediate consideration of the application on its merits. Much of the discussion by the respondents would be far more effective and persuasive if this were an appeal from an order of the lower court instead of an application for the exercise of the discretionary power of this court in issuing an original writ. ■ The petitioner has an absolute right to change her attorneys, in the absence of any relation of the attorneys to the subject matter of the action, and it is necessary only for her to request such change in order to justify the court in making an order therefor. (Code Civ. Proc., sec. 284; *Woodbury* v. *Nevada etc. Ry. Co.,* 121 Cal. 165 [53 Pac. 450].) We are, therefore, but little concerned over the effort of the respondents to prevent a consideration of the application on its merits, which consideration primarily needs to be addressed to the legal effect of a purported assignment made by petitioner to H. L. Hagan, one of the attorneys who formerly represented her in certain litigation concerning the estate of Leon Morrison, deceased.

Leon Morrison died in the county of Alameda on or about the twentieth day of June, 1921, leaving a considerable estate. By his last will and testament, made a few days before his decease, but not discovered until some time later, his estate was devised and bequeathed to Maud Scott, also known

as Marion Scott, the petitioner in this matter. Before the discovery of the will Marion Scott entered into a written agreement with H. L. Hagan, an attorney at law, in which agreement, after reciting that Marion Scott had certain claims against the estate of Leon Morrison, deceased, and the administrator of his estate, based upon promises and agreements made prior to the death of the deceased, Marion Scott agreed to employ Hagan as her attorney to prosecute said claims for her. By further provisions she agreed to give Hagan, "as compensation for said services, one-half of the net recovery of money and property obtained by judgment or compromise of the said claims." By the further terms of the agreement Hagan accepted the employment, and it was stipulated that, as the attorney in the prosecution of the claims and in the management of any litigation based thereon, he should "have the powers and duties prescribed for an attorney at law by the laws of the State of California."

Pursuant to his employment, Hagan commenced a proceeding in equity in the Superior Court, in and for the County of Alameda, wherein Maud Scott, this petitioner, was plaintiff, for the purpose of compelling the production of the last will and testament of Leon Morrison. Shortly after the relation of client and attorney was entered into, as set out in the agreement above referred to, Maud Scott executed and delivered to Hagan a writing, by the terms of which she assigned and set over to Hagan "one-half of the net recovery of all money and property received" by her from the estate of Leon Morrison, deceased. Subsequent to the execution and delivery of this assignment the will of Leon Morrison was filed in the respondent court. Opposition to the petition was filed by the attorney-general in behalf of the people of the state of California, and by two groups of persons claiming to be the surviving heirs of the decedent Morrison. The proceedings resulting in the admission of the will to probate are reviewed in the decision of this court in *Estate of Morrison*, 198 Cal. 1 [242 Pac. 939].

Subsequent to the employment of Hagan by the petitioner she requested Hagan to associate Milton T. U'Ren with himself as an attorney in the proceedings. It is alleged in the answer of the respondents in connection with that request that petitioner stated to U'Ren that she desired to

associate him with Hagan as her attorney, and that she had theretofore transferred and set over to Hagan a one-half interest in and to all the property constituting the estate of the decedent Morrison, and that Hagan was then the owner and possessed of such one-half interest; and that she further stated to U'Ren that Hagan had agreed that, if U'Ren would associate himself as attorney for petitioner, Hagan would, by written instrument, transfer to U'Ren a one-half interest in and to the assignment from petitioner to Hagan. The respondents allege that it was upon these representations that U'Ren associated himself with Hagan as attorney for petitioner in the proceedings in the probate court.

In this connection, it is alleged in the reply of petitioner to the return that the purported assignment to Hagan, entered into one and a half months after the relation of attorney and client between petitioner and Hagan began, was executed at the special instance and request of Hagan, and that at the time of its execution petitioner was without the aid and assistance of separate counsel, and executed the assignment without knowing the true nature of its purpose or its effect, and was without knowledge of the terms of the assignment and without freedom of action in the matter, until the attorneys Cullinan and Burke, whom she now seeks to have substituted, called her attention to the terms of the purported assignment.

Hagan made an assignment to U'Ren of one-half of whatever interest he had acquired by virtue of the assignment from petitioner to himself, and thereafter Hagan and U'Ren represented the petitioner in matters relating to the estate of Morrison. It is alleged by the respondents that Hagan and U'Ren, as attorneys for petitioner, performed a vast amount of labor in the matter, and, relying upon the statements and representations of petitioner that the assignment made by her conveyed to Hagan a one-half interest in petitioner's interest in Morrison's estate, expended more than thirteen hundred dollars in petitioner's behalf, and that certain proceedings by way of contest of the will of Morrison are still pending before the Superior Court.

The petitioner, on or about September 8, 1927, employed William J. Cullinan and Stanley C. Burke, attorneys at law, to represent her in all matters relating to the estate of Morrison, deceased, giving them full power as attorneys

"to prosecute and collect any right, title, interest or claim" she might have in and to the estate. With matters in this shape, the petitioner requested Messrs. Hagan and U'Ren to agree to the substitution of attorneys. They refused, upon the ground that Hagan held "a fifty per cent contingent contract from Miss Scott." Petitioner thereupon applied to Judge Church, of the respondent court, to make an order substituting Messrs. Cullinan and Burke as her attorneys in all matters connected with the estate of Leon Morrison, deceased. According to the answer and return the motion was considered on the affidavits and other documents set forth in the petition for writ of mandate filed here, and other and additional testimony and evidence, upon which Judge Church decided and held that the expression "one-half of the net recovery of all money and property received by said party of the second part from the above named estate," set forth in the assignment from Marion Scott to Hagan, was intended to mean by the parties, and did mean in said instrument, one-half of the interest of said Scott in and to said estate of said Leon Morrison, deceased, and that said instrument created in Hagan a power coupled with an interest, and that the subsequent employment by Marion Scott of U'Ren, together with the assignment by Hagan to U'Ren at the direction of Marion Scott, created in U'Ren a similar power coupled with an interest. It is also alleged that the judge decided and determined from the evidence that the petitioner here was estopped and precluded, as against Hagan and U'Ren, and particularly as against U'Ren, from claiming that the assignment from her to Hagan was not an assignment of one-half of the interest of petitioner in and to the estate of Leon Morrison, deceased, and did not create a power coupled with an interest.

The order denying the motion for substitution was made on or about the tenth day of November, 1927. Application to this court for a writ of mandate was not made until seven months later. During the intervening period, Hagan and U'Ren, it is alleged, have continued to act as petitioner's attorneys in the estate of Morrison. These facts are pleaded by the respondents in support of the further allegation that petitioner has been guilty of laches and has caused an estoppel to arise which prevents the commencement, at such a

late date, of any proceeding to substitute attorneys in the place of Hagan and U'Ren.

This is not an appeal from Judge Church's ruling, and, unless it be determined that petitioner transferred and assigned to attorney Hagan an interest in the property involved in the estate of Leon Morrison, deceased, petitioner is clearly entitled to a writ directing the respondents to make the order of substitution of attorneys prayed for. Section 284 of the Code of Civil Procedure provides that the attorney in an action or special proceeding may be changed at any time upon the order of the court upon the application of either client or attorney, after notice from one to the other. "The rule must be considered as settled in this state, under the above provision of the code, that in the absence of any relation of the attorney to the subject matter of the action, other than that arising from his employment, the client has the absolute right to change his attorney at any stage in the action." (*Gage* v. *Atwater,* 136 Cal. 170, 172 [68 Pac. 581, 582].) The same decision lays down the further rule that "The fact that the attorney has rendered valuable services under his employment, or that the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action, does not deprive the client of this right. Section 1021 of the Code of Civil Procedure provides that the mode and measure of compensation of attorneys is left to the agreement of the parties, and in the absence of any other agreement in reference thereto there arises the ordinary money obligation which exists upon the employment of one person in the service of another." Therefore, in this case, the facts that Hagan and U'Ren performed a "vast amount of labor" and expended for and in behalf of petitioner several hundred dollars, pass out of our consideration.

We are of the view that Hagan did not acquire such an interest in the "subject of the agency," or subject matter of the action, within the meaning of section 2356 of the Civil Code, as to prevent petitioner from revoking his employment as an attorney in the proceeding. A power coupled with an interest must be an interest in the thing itself; the power must be engrafted on an estate in the thing, and the power and interest must be united in the same person. (*Hunt* v. *Rousmanier's Admr.,* 8 Wheat. (U. S.)

174 [5 L. Ed. 589, see, also, Rose's U. S. Notes].) By
the terms of the first agreement between petitioner and
Hagan, petitioner employed Hagan in his capacity as an
attorney at law to prosecute certain claims against the estate
of Leon Morrison, deceased, and agreed to give him "as
compensation for said services one-half of the *net recovery
of money and property obtained*" for her by his services
[italics added], giving to Hagan the powers and duties pre-
scribed for an attorney at law by the laws of the state. It
cannot be successfully argued that this transaction amounted
to the assignment to Hagan of an interest in the subject
of the action. By the second agreement or assignment peti-
tioner set over and assigned to Hagan merely "one-half of
the net recovery" of money and property received by her
from the estate of Morrison. By virtue of that assignment
Hagan had no more than an interest in enforcing the claims
of the petitioner against the Morrison estate, for upon his
efforts depended his compensation as attorney for his client,
the claimant. But the interest which he had in the money
or property secured for his client, a part of which he was to
get as compensation for his services, was an interest in that
which was to be produced by the exercise of his power as
attorney for his client, and did not amount to an interest
in "the subject of the agency" within the meaning of sec-
tion 2356 of the Civil Code, *supra,* which acts to prevent
the revocation by the principal of the power of an agent
coupled with an interest in the subject of the agency.
(*Boehm* v. *Spreckels,* 183 Cal. 239, 247 [191 Pac. 5];
*Flanagan* v. *Brown,* 70 Cal. 254, 259 [11 Pac. 706].)
Hagan's interest was only a right to share the proceeds
which might result from the execution of his power. He
did not have a power coupled with an interest. In the case
last noted the court cited the case of *Hartley and Minor's
Appeal,* 53 Pa. St. 212 [91 Am. Dec. 207], as being "in-
structive in this connection." In that case a party gave to
Hartley and Minor a power of attorney to collect and re-
ceive all money and property coming to her as an heir of a
deceased person, with power to convey her interest in the
real estate of the decedent, etc., the said Hartley and Minor
to receive for their services one-half of the net proceeds of
her interest in said estate which might be collected or re-
ceived by them as her attorneys. Litigation arose over the

transaction, and Hartley and Minor claimed the power was irrevocable by their principal, under the theory that it was a power coupled with an interest. The trial court decided against their contention, and on appeal the Supreme Court held that the power and the interest could not coexist. The court said: "The interest the appellants would have would be in the net proceeds collected under the power, and the exercise of the power to collect the proceeds would *ipso facto* extinguish it entirely, or so far as exercised. Hence the appellants' interest would properly begin when the power ended."

We conclude, therefore, that petitioner's assignment to Hagan did not raise an agency coupled with an interest within the meaning of section 2356 of the Civil Code. U'Ren acquired no greater interest in the transaction than Hagan had. Neither of these attorneys is, therefore, in position to resist the desire of petitioner for a substitution of attorneys on the ground of a power or agency coupled with an interest, and the respondents, answering for them, should grant her motion.

We are not strongly impressed with the contention of the respondents that petitioner is estopped from seeking a substitution of attorneys by her representations to U'Ren concerning the purported assignment of an interest to Hagan. According to the records of this court Mr. U'Ren was admitted to practice law in this state many years ago. The volumes of the decisions of this court disclose that he has been prominent in the conduct of many important cases. We are not prepared to hold that a professional nurse, a laywoman, is estopped from exercising her legal right to change her counsel for the alleged reason she may have misstated to a practicing attorney of experience the legal effect of an existing written instrument prepared by another attorney.

Neither are we in sympathy with the contention of the respondents that the relief sought here should be denied on the ground of the laches of the petitioner in making the application, following the denial of her motion in the court below. It is true that petitioner waited several months, but it is not shown in the return that any injury or disadvantage has been wrought to the respondents by the delay. In her reply to the return, petitioner, by her counsel, alleges

that she did not know the true extent of the assignment prepared by Hagan until she received the independent advice of the counsel she is now seeking to have substituted for her former attorneys.

The conclusions we have reached render it unnecessary to consider the further contentions of the petitioner.

Let a peremptory writ of mandate issue as prayed for.

Preston, J., Curtis, J., Shenk, J., Richards, J., Seawell, J., and Langdon, J., concurred.